The Honorable Jeremy Hutchinson State Senator 3 Chenal Woods Drive, #331 Little Rock, Arkansas 72223
You have requested my opinion on several questions arising from the following reported background facts:
 The City of Benton, which has a mayor-council form of government, has an alderman whose spouse is the elected city clerk for the city. While both have been in office, the alderman has (1) voted to increase the salary for the office of clerk; (2) voted to increase his salary (along with the other aldermen); and (3) voted to appropriate money for the clerk's salary which was included within the general fund budget. The ordinance in question setting the salaries was brought from the finance committee, which this alderman chaired at the time. The alderman made a motion that the ordinance be considered by the council which was seconded. The ordinance set the salaries of the mayor, city clerk and the aldermen, all of which were increased. The ordinance was passed in January 2007 with a 7-3 margin on the final vote. The votes to appropriate funds for the city clerk's salary have occurred yearly when the general fund budget was passed. The appropriated funds are included within the city's overall general fund budget.
Against this backdrop, you have asked:
 1. Is there a violation of A.C.A. § 21-8-304 with respect to the alderman voting to increase his spouse's salary considering his authorization to set the city clerk's salary in A.C.A. § 14-43-409? *Page 2 
 2. Is there a violation of A.C.A. § 21-8-304 with respect to all of the aldermen voting to increase their own salaries considering their authorization to do so in A.C.A. § 14-43-409?
 3. Is there a violation of A.C.A. § 21-8-304 with respect to the alderman voting to appropriate money for his spouse's salary which was included within the general fund budget?
 4. If there is a violation of any of the foregoing questions, what is the appropriate remedy?
RESPONSE
Subsection 21-8-304(a) of the Arkansas Code bars an alderman from voting on an issue "to secure special privileges or exemptions" unavailable to others. It is my opinion in response to your first three questions that city council members remain subject to subsection 21-8-304(a) when they set the salaries of city officers pursuant to section 14-43-409 of the Code. But only a finder of fact can determine whether a violation of subsection 21-8-304(a) has occurred in any particular case. Consistent with previous opinions of this office, I cannot state as a matter of law that participating in a vote to increase a family member's salary necessarily constitutes a violation of this statute. In response to your fourth question, another statute, A.C.A. § 21-8-303, locates enforcement authority initially in the prosecuting attorney's office or the Arkansas Ethics Commission, and authorizes any private citizen to enforce compliance through an action in circuit court if the prosecuting attorney fails to act.
DISCUSSION
Question 1 — Is there a violationof A.C.A. § 21-8-304 with respect to the alderman voting to increasehis spouse's salary considering his authorization to set the cityclerk's salary in A.C.A. § 14-43-409?
Section 21-8-304 codifies certain aspects of the common law conflict of interest principle[1] by prohibiting the use of a position to "secure special privileges or exemptions . . . that are not available to others. . . .": *Page 3 
 No public servant shall use or attempt to use his or her position to secure special privileges or exemptions for himself or herself or his or her spouse, child, parents, or other persons standing in the first degree of relationship, or for those with whom he or she has a substantial financial relationship that are not available to others except as may be otherwise provided by law.[2]
The other Code section you have cited, A.C.A. § 14-43-409, requires that the compensation of municipal officers be set by the city's governing body:
 All officers provided for in this subtitle, and by ordinance of any city under this subtitle, shall receive such salary as the council of any city may designate, and in no instance shall they receive an additional compensation by way of fees, fines, or perquisites. All fees, fines, or perquisites shall be paid into the city treasury.[3]
By the terms of A.C.A. § 14-43-409, and the Arkansas Constitution,see n. 3, supra, therefore, the city council has the power and duty to determine the compensation of municipal officers. I assume this is what you are referring to in your question when you note the alderman's "authorization to set the city clerk's salary. . . ."
The alderman plainly has the authority and responsibility, along with the other council members, to set the clerk's salary. But in my opinion he remains subject to the ethical strictures of A.C.A. § 21-8-304 when exercising this authority. Section 14-43-409 and Amendment 55, § 4, confer general authority to set salaries. These laws do not, in my opinion, relieve city council members of their obligation under subsection 21-8-304(a) to refrain from using their public positions to obtain personal benefits.
Consistent with previous opinions of this office, however, I cannot state as a matter of law that participating in a vote to increase a family member's salary necessarily constitutes a violation of subsection 21-8-304(a).[4] Rather, as I have *Page 4 
previously stated, this statute "creates a fact question as to whether a public official has `used his position' to secure `special privileges' for himself or a family member."[5] In the opinion just cited, No. 2010-112, I addressed the question "whether the mayor's wife can be employed under a commission to which the mayor appoints the members." I agreed with my predecessors that generally employment is not a "special privilege or exemption" within the meaning of A.C.A. § 21-8-304(a).[6]
As with employment, a salary raise does not, standing alone, constitute a "special privilege or exemption" for purposes of A.C.A. § 21-8-304(a), in my opinion. Instead, the question whether the alderman secured a "special privilege," i.e., "a right . . . granted as a peculiar benefit, advantage, or favor,"[7] is one of fact that must ultimately be determined based upon a thorough consideration of all the circumstances. Additionally, because subsection 21-8-304(a) carries a penal provision, it must be strictly construed. Every doubt as to construction must be resolved in favor of the one against whom the enactment is sought to be applied.[8]
It should also be noted that violations of A.C.A. § 21-8-304 are prosecutable by the local prosecuting attorney, and in some situations by any citizen:
 (a)(1) It shall be the duties and responsibilities of the prosecuting attorneys of this state to supervise compliance with this subchapter and to prosecute persons who violate the provisions of this subchapter.
 (2) However, the Arkansas Ethics Commission shall also have authority to investigate and address alleged violations of this subchapter. *Page 5 
 (b)(1) In the event the prosecuting attorney shall fail or refuse to enforce the provisions of this subchapter when the facts are known by him or her, or called to his or her attention, any citizen of this state may bring action in circuit court to force compliance with this subchapter.
 (2) The citizen shall be entitled to receive reimbursements for expenses and reasonable attorney's fees upon the successful outcome of such litigation.[9]
Enforcement authority with respect to subsection 21-8-304(a) thus lies initially in the prosecuting attorney's office or the Arkansas Ethics Commission; and any private citizen can enforce compliance through an action in circuit court if the prosecuting attorney fails to act.[10]
Question 2 — Is there a violationof A.C.A. § 21-8-304 with respect to all of the aldermen voting toincrease their own salaries considering their authorization to do soin A.C.A. § 14-43-409?
As stated above, in my opinion city council members remain subject to the ethical strictures of A.C.A. § 21-8-304 when exercising their authority under section 14-43-409 and Amendment 55, § 4, to determine salaries. Whether the strictures have been violated in any particular instance presents a question of fact that cannot be resolved in the limited format of an opinion from this office. Such questions must be addressed initially by those with enforcement authority, as also discussed above.
Question 3 — Is there a violationof A.C.A. § 21-8-304 with respect to the alderman voting toappropriate money for his spouse's salary which was included withinthe general fund budget?
See above responses.
Question 4 — If there is a violation of any of the foregoingquestions, what is the appropriate remedy? *Page 6 
See response to Question 1 above, discussing A.C.A. § 21-8-303.
Deputy Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] See Op. Att'y Gen. 2002-297 (discussing the common law prohibition against conflicts of interest).
[2] A.C.A. § 21-8-304(a) (Supp. 2011).
[3] A.C.A. § 14-43-409 (Repl. 1998) (see 2011 supplement for text of this section effective January 1, 2012). See also
Ark. Const. amend. 56, § 4 ("Compensation of municipal officers and officials shall be fixed by the governing body of the municipality, not to exceed limits which may be established by law.").
[4] See Op. Att'y Gen. 94-296 (opining that "the raising of a spouse's salary [by a school board member] would invoke the prohibitions of A.C.A. § 21-8-304(a) if customary procedures andpractices for doing so were not followed[,]" (emphasis added), and noting that "[t]hese are factual determinations that must be made on a case-by-case basis."). Accord Op. Att'y Gen. Nos. 98-264 (declining to opine that "the creation of committees on which council members will serve and the designation of their salaries necessarily constitutes a violation of [A.C.A. § 21-8-304(a] .); 89-044 (opining that A.C.A. § 14-14-1202), a County Code prohibition similar to subsection 21-8-304(a), requires a factual review and that a quorum court member does not violate the prohibition merely by participating in a vote to fill a vacancy in a county elective office where one of the candidates is related to the member.)
[5] Op. Att'y Gen. 2010-112.
[6] Id. (citing Op. Att'y Gen. Nos. 96-328 and 88-194).
[7] Op. Att'y Gen. 88-194 (reciting the common definition of "privilege").
[8] See generally Wilcox v. Safley,298 Ark. 159, 766 S.W.2d 12 (1989).
[9] A.C.A. § 21-8-303
[10] You have not asked, and therefore I do not address the general common law prohibition against conflicts of interest, which may dictate that a public official abstain from voting on a particular matter where their vote might be impermissibly influenced by self-interest. See, e.g., Op. Att'y Gen. 2006-137; 2003-007; 2002-297.